346 So.2d 758 (1977)
Nina M. BROWN
v.
L. H. H. R. A., Lake Charles Mental Health Center.
No. 11179.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
Rehearing Denied June 13, 1977.
*759 Thomas E. Foley, Lake Charles, Michael O. Hesse, Baton Rouge, for appellant Nina M. Brown.
Robert L. Raborn, Baton Rouge, for appellee.
Before LANDRY, EDWARDS and COLE, JJ.
COLE, Judge.
This is an appeal of a ruling by the Louisiana Civil Service Commission upholding the discharge of appellant, Nina M. Brown, by the Louisiana Health and Human Resources Administration, Division of Mental Health. We reverse.
The appellant began work at the Lake Charles Mental Health Center in July, 1974, as an Occupational Therapist I. On Sunday, September 28, 1975, she went to the Calcasieu Parish Jail to visit her son. After visiting her son, she joined her daughter-in-law who was outside of the jail passing out pamphlets written by Ms. Brown critical of the Sheriff's Department. Ms. Brown was arrested at this time.
When allowed to make a phone call, since it was Sunday, Ms. Brown decided it was most advisable to call a bondsman to obtain her release. However, the bondsman never came. She was held in the parish jail until Monday, September 29, at approximately 12:00 o'clock noon, when she was taken out and shown the warrants charging her with resisting arrest, criminal mischief and inciting a riot. She was then transferred to the women's jail.
On Wednesday, October 1, when she was taken to her arraignment, she passed a note to her daughter-in-law asking that she call the Administrator of the Center, Nolan *760 Landry, to ask for an "indefinite leave of absence" for reasons beyond her control. She also testified that she asked her attorney at the arraignment to call Mr. Landry to inform him of her whereabouts. However, her attorney did not call. According to the appellant (and it is uncontradicted by the appointing authority), during this entire period she was held in jail without bond and not allowed to communicate with anyone.
The appellant's daughter-in-law, Delores Peters, contacted the Center pursuant to the appellant's instructions in the note passed on Wednesday, October 1. Upon calling the Center and informing them of appellant's request for leave, she was informed that there was "no such thing." However, the possibility existed that the appellant might have qualified for either annual leave [Civil Service Rule 11.7] or leave without pay [Civil Service Rule 11.27(A)], either of which may be granted without written request, contrary to the contentions of the appointing authority. Ms. Peters was not in a position to give any additional information to the Center about the appellant's condition or circumstances beyond what was contained in the note, because the appellant had not been allowed any additional communication.
On Thursday, October 9, at approximately 12:45 P.M., the appellant was able to obtain her release with the assistance of counsel and bondsmen from Lafayette. After her release, she spent the remainder of the day conferring with her attorneys about her future course of action.
On Friday, October 10, the appellant sent a note to the Center by way of her daughter-in-law. According to Mr. Landry, who received the note, it said in effect: "Will you please give Delores, my daughter-in-law, my check. I am at the doctor's. I will talk to you Monday if I am better. I have been in jail where I wasn't allowed to communicate with anyone in a situation beyond my control." (Record, p. 78) The appellant testified that after approximately two weeks in jail, she was very upset and nervous and did, in fact, visit the doctor on Friday, October 10.
On Monday, October 13, at approximately 8:10 A.M., the appellant came to the Center. She went to see Mr. Landry, who immediately informed her that "she had been terminated." Mr. Landry did not ask for an explanation of the appellant's actions or whereabouts during her absence, nor did he listen to any attempted explanation. Apparently, a dispute then arose concerning having witnesses to their conversation, and Mr. Landry terminated the meeting.
Mr. Landry testified that he was told by an employee of the Center who received the call, that an unidentified female caller telephoned the Center on Monday, September 29, to report that Ms. Brown would not be in because of illness. On September 30 Mr. Landry learned of the appellant's actual whereabouts on the 6:00 P.M. news on a local television station and of the charges against her. He also saw a subsequent newspaper article describing the events leading to her arrest. However, the article did not name the appellant.
There appears to be some dispute as to the time of and reasons for the dismissal. Mr. Landry testified that the reason for the dismissal was that the appellant failed to report to work. This reason, however, in light of the circumstances, is an over-simplification of the issue. It is clear to us from the record that Mr. Landry decided to fire the appellant on October 1st after learning of her arrest and drafted a dismissal letter dated the same day. Therefore, her subsequent actions had no bearing on Mr. Landry's decision to dismiss her.
In the October 1st letter of dismissal the reasons stated were as follows:
"On September 29, 1975, you had a friend call the Center reporting that you were ill. On September 30 and October 1, 1975, you did not report to work or notify us of the reason that you were not coming to work. You abandoned your position according to Civil Service Definition 1.1." (Record, p. 2)
Evidently doubting the validity of that letter of dismissal because of its late receipt by appellant, Mr. Landry sent another dismissal *761 letter dated October 28, 1975, in which the reasons for dismissal were:
"On September 29, 1975, you had a friend call the Center reporting that you were ill. Rather than being ill you were in jail. On September 30 through October 10, 1975 you did not report to work or notify us of the reason that you were not coming to work. You were not available to perform your duties." (Record, p. 5)
The possibility that the appellant had authorized a call to the Center on September 29th reporting that she was sick in order to be placed on sick leave when she was not, in fact, ill, does not appear to be the reason for her dismissal. A person who intentionally attempts to receive pay when such pay is not due may, under certain circumstances, be guilty of conduct justifying dismissal. However, in the case in point, Ms. Brown testified that she never asked anyone to call the Center telling them she was ill, nor did she otherwise authorize such a call. To the contrary, she claims she was unable to communicate with anyone until she passed a note to her daughter-in-law on Wednesday requesting that she call Mr. Landry. Further, it is evident from Mr. Landry's testimony that any attempt by the appellant to receive pay to which she was not entitled had no bearing on his decision to terminate her employment. The reason she was dismissed was that she did not report to work as a result of being arrested and in jail.
The appellant urges that the appointing authority's action in dismissing her was racially discriminatory. Appellant's counsel cites numerous federal cases arising under Title VII of the Civil Rights Act of 1964 for this proposition. The reasoning advanced by the appellant is that because more blacks than whites are arrested, an employer's practice of dismissing those arrested has a racially-discriminatory effect upon blacks. In an action before the Louisiana Civil Service Commission based upon Louisiana law, the cases cited by the appellant do not control. Any references to the cases cited would be merely for purposes of persuasion. Any Title VII action which may be brought by the appellant is a distinct remedy from civil service appeals based upon state law, and is not applicable herein.
The burden of proving that the disciplinary action taken by the employer is discriminatory is upon the employee. Louisiana Constitution of 1974, Article 10, § 8(B). The record does not support the claim that the appointing authority discriminated against the appellant on the basis of her political or religious beliefs, sex or race within the meaning of Article 10, § 8(B).
However, it is clearly established that any disciplinary action taken against a classified employee must be based on cause. Article 10, § 8(A) provides:
"No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission. The burden of proof on appeal, as to the facts, shall be on the appointing authority."
This Court has said recently in Hamlett v. Division of Mental Health, etc., 325 So.2d 696 (La.App. 1st Cir. 1976):
"* * * Our Supreme Court has jurisprudentially defined legal cause for disciplinary action against a classified employee as that conduct which impairs the efficiency of the public service, and which bears a real and substantial relation to efficient and orderly operation of the public service in which the employee is engaged. * * *" (325 So.2d at 700)
The burden of proof as to the facts indicating the cause for dismissal is on the appointing authority. Louisiana Constitution of 1974, Article 10, § 8(A); Michel v. Department of Public Safety, Alcoholic Beverage Control Board, 341 So.2d 1161 (La.App. 1st Cir. 1976).
Under Louisiana Constitution Article 10, § 12, the decisions of the Civil Service Commission are subject to review on appeal on questions of law or fact. The *762 scope of review is essentially the same as that for appeals from decisions of district courts. Michel v. Department of Public Safety, Alcoholic Beverage Control Board, supra.
In the instant case, the decision by the appointing authority to dismiss the appellant was made, in effect, after two days' absence from the job, with knowledge only that the appellant had been arrested. It is clear from the record that the appellant did not try to conceal her whereabouts or incarceration. It is also clear that the appellant made a reasonable effort under the circumstances to contact her employer. Furthermore, the appellant did not abandon her job within the meaning of Civil Service Rule 1.1 as alleged by the letter of dismissal, because her absence therefrom was involuntary.
As stated in Hamlett v. Division of Mental Health, supra, conduct justifying dismissal must impair the efficiency of the public service, and must bear a real and substantial relation to efficient and orderly operation of the public service. The mere arrest and incarceration of a classified employee is not per se legal cause for dismissal. It is necessary to consider the circumstances of the arrest and the needs of the employer to determine if sufficient cause for dismissal exists. Factors to be considered in relation to the impairment of job performance include, but are not limited to: the validity and ultimate disposition of the charges, the length or possible length of incarceration, and the degree of resulting notoriety.
In the instant case, the appointing authority has not sustained its burden of proving legal cause exists to justify the dismissal of the appellant. The appointing authority determined to fire the appellant merely because of her arrest. With knowledge of the appellant's arrest and incarceration, the appointing authority did not attempt to determine or consider the possible length of her absence or other circumstances surrounding the incident. Moreover, the appointing authority did not bear the burden of establishing that the appellant's limited absence impaired its operations. It appears from the record that the Center maintained operations with only one occupational therapist for periods of extended absences by other therapists.
Therefore, for the foregoing reasons, it is ordered that the appellant be reinstated as of the date of dismissal, with all rights incident thereto, including accumulated salary.
REVERSED AND RENDERED.