396 So.2d 430 (1981)
Royal J. McGEE
v.
SEWERAGE AND WATER BOARD OF NEW ORLEANS.
No. 11507.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1981.
Andry & Andry, Jerald N. Andry, Gilbert V. Andry, III, Leonce J. Malus, III and Lowell Dye, New Orleans, for plaintiff-appellee.
John A. Gordon, Sp. Counsel, Vincent T. LoCoco, Associate Counsel, Gerard M. Victor, *431 Associate Counsel, Sewerage and Water Bd. of New Orleans, New Orleans, for defendant-appellant.
Before GULOTTA, SCHOTT and SARTAIN, JJ.
SARTAIN, Judge.
The Sewerage and Water Board of New Orleans (Board) appeals from a decision of the Civil Service Commission of New Orleans (Commission) which reduced the dismissal of Royal McGee (Water Service Emergency Inspector II) to two weeks suspension without pay. We reverse and uphold the dismissal.
The employees of the Board's Emergency Department work in three eight-hour shifts commencing at 12 midnight, 8:00 a. m. and 4:00 p. m., respectively. The shifts are rotated in the above order. Following six days of work and two day off, the employee then reports to the next shift. Because the midnight shift receives fewer calls an employee on that shift is frequently "pulled off" his regular shift and is assigned to one of the other shifts. However, the shift rotation schedule does not change and at the conclusion of the sixth working day and two days off, the employee reverts back to the regular schedule.
McGee's regular shift was the midnight shift and on Monday he was to have rotated to the 8:00 a. m. shift. During the latter part of the previous week he was pulled off his regular shift and assigned to the day shift (8:00 a. m.). At the conclusion of his two days off he reported to the 4:00 p. m. shift instead of the 8:00 a. m. shift.
The letter of dismissal stated (1) that on Sunday, June 17, 1979 he called at approximately 11:00 p. m. and notified his supervisor that he was "too tired" to come to work at his scheduled midnight shift, and (2) that on June 25, 1979 he was due to report at 8:00 a. m. and did not do so until 4:00 p. m.
McGee had received two prior suspensions without pay. On May 13, 1978 he was suspended for two weeks for leaving the job before being relieved. On May 26, 1978 he was suspended for thirty-four days for taking his assigned truck home and sleeping for five hours while on duty. In the letter informing McGee of the suspension the Executive Director of the Board warned McGee: "Any further deviation from the rules or policies of the Sewerage and Water Board will be cause of your immediate dismissal from its services." Both of these suspensions were appealed to and upheld by the Commission.
In its written reasons for judgment the Commission concluded that the "record preponderates" that McGee was "confused" about the shift change and that his reporting to work at 4:00 p. m. instead of 8:00 a. m. was not a "conscious dereliction of duty". With respect to the two prior suspensions the Commission stated: "He was assessed a stiff penalty for these derelictions and in effect, paid for them." The Commission then reduced the dismissal by the appointing authority to two weeks suspension.[1]
The Board contends here that the decision of the Commission is contrary to the facts and that by substituting its own opinion for that of the rights and prerogatives of the Appointing Authority it has contravened this court's holding in Branighan v. Department of Police, 362 So.2d 1221 (La. App. 4th Cir. 1978); cert. denied 365 So.2d 247 (La.1978).
The Commission submits that its decision was a fair and reasonable one under the circumstances and adds: "An elementary principle of appellate practice is that the decision of the trial court is presumed correct and should not be disturbed absent the appellant's clear showing of manifest error. [Citations omitted] This is especially true when questions regarding credibility of witnesses and weight of evidence are important. [Citations omitted]."
*432 Before addressing the merits, we deem it necessary to discuss two related matters. One such matter is the question of whether the report of the hearing examiner (Referee) should be made a part of the appellate record and, if so, what weight should be accorded that report. The other matter pertains to the standard of review to be employed by an appellate court when the decision of the Commission is based on evidence adduced at a hearing conducted by a Referee.
Initially, this record did not contain the report of the hearing examiner and the Board objected. The Commission took the position that the Referee's report, if one was rendered, was a privileged communication and was not a part of the appellate record. Following a show cause order and the submission of briefs on the question we resolved the matter by directing the Commission to forward the report for inclusion in the record. The Louisiana Supreme Court denied writs on February 13, 1981 and the report is now a part of the record before us.[2]
On the question of what weight, if any, should be given the report the Commission appears to fear that by including the report in the record its constitutionally sanctioned authority to judge and decide its own cases will be diluted. Art. 10, § 12, La.Const. 1974.[3] Our purpose here is to dispel such thoughts. The Commission's "exclusive power and authority" to decide its cases cannot be questioned. Inherent in this authority is the Commission's prerogative to attach to the report such weight as it deems appropriate based on the record before it. For the purposes of appellate review we consider the report as advisory to the Commission and in no other light.
With the adoption of the Louisiana Constitution of 1974 the decisions of the Civil Service Commission became subject to review on law and fact. Prior to the advent of the use of a Referee to conduct such hearing the scope of appellate review was determined to be essentially the same as in other civil matters. Michel v. Department of Public Safety, Alcoholic Beverage Control Board, 341 So.2d 1161 (La.App. 1st Cir. 1976); writ refused 343 So.2d 1078 (La. 1977). The usual guidelines for the manifest error rule as set forth in Canter v. Koehring, 283 So.2d 716 (La.1973) and as clarified in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) were applicable. However, in Merchant v. Department of Finance, 391 So.2d 587 (La.App. 4th Cir. 1980), rehearing denied December 19, 1980, where, as here, the hearing was conducted by a Referee, the court held the rule to be inapplicable. In doing so it noted that "the great weight accorded conclusions and determinations made by the trier of fact under Canter and Arceneaux is based on the advantage derived from personal observation of the witnesses, their demeanor on the stand, and the manner in which they responded to examination." The court then resolved to make its independent review of the record to determine "whether the conclusion reached by the Commission is arbitrary or capricious or manifestly wrong." We adhere to that ruling here. Cf. Subdivision Planning Engineers, Inc. v. Manor Development Corp., 290 So.2d 375 (La.App. 4th Cir. 1974).
Initially, our review of the record compels us to differ with the conclusion reached by the Commission that the evidence "preponderates that appellant (McGee) was confused." The Commission noted that McGee's supervisor "who also testified" did not deny that McGee stated to him that he *433 would report for the 4:00 p. m. shift. The supervisor specifically denied recalling any such statement.[4] Only McGee stated that he was confused. He conceded that he was familiar with the shift rotation schedule and had followed it without failure for the previous twenty-two months. (September 1977 to June, 1979). Two other co-employees (both called as McGee's witnesses) testified that the rotation schedule was well known by all members of the Emergency Department, including McGee, and presented no particular problem. The schedule was in the supervisor's office (desk) and available for all to see upon request.
The Board urges that its emergency personnel are charged with the responsibilities the name implies. They are to respond to emergency calls where the rupture or malfunction of a main water line poses a potential hazard to life and property. Reliability and punctuality on the part of such personnel are essential characteristics. It argues that the failure of McGee to report timely on June 25, 1979, coupled with his two prior infractions, clearly evidence either his unreliability or his indifference to the requirements of his job and constitute ample cause for his dismissal. We agree.
For these reasons the decision of the Civil Service Commission is reversed and set aside and Royal McGee's appeal to the Commission is dismissed.
NOTES
[1] The Commission did not find it necessary to resolve the conflict in the testimony relative to the June 17 incident as to whether McGee called in "sick" or "too tired to work." We agree.
[2] The Referee recommended two weeks suspension without pay.
[3] Art. 10, § 12 reads as follows:

"Each commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases, with subpoena power and power to administer oaths. It may appoint a referee to take testimony, with subpoena power and power to administer oaths to witnesses. The decision of a commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located, upon application filed with the commission, within thirty calendar days after its decision becomes final."
[4] See Transcript, pages 74 and 75.