KLEES, Judge.
Appellee, Mr. Sergio Marinovic, contending that he was forced to resign his position with appellant, the New Orleans Police Department, filed an appeal with the Civil Service Commission on April 27, 1981, to be reinstated. Based on the testimony adduced at the hearing, the Commission found the resignation was forced and ordered Mr. Marinovic reinstated to the New Orleans Police Department without back pay. The decision was later amended to award Mr. Marinovic back pay from June 17, 1981, until December 11, 1981.
From this decision the New Orleans Police Department appeals urging that the Commission erred in upholding Mr. Marino-vic’s appeal and ordering his reinstatement with back pay. We affirm the Commission’s ruling.
Mr. Marinovic had been employed by the New Orleans Police Department as a police officer for two years prior to his resignation on April 21, 1981. For the past one and one-half years, Mr. Marinovic had been working on obtaining a Bachelor’s Degree in Criminal Justice from Loyola University. When his designated shift interfered with his class schedule, he would use his furlough (annual leave) in order to attend the class.
On the night in question, when Mr. Mari-novic requested two hours furlough time to attend class, the request was denied by Captain Holman, his supervisor. When Mr. Marinovic informed his captain that he would leave the station to go to school and submit his resignation the next day, Captain Holman told him that he must submit the resignation before departing the station. Mr. Marinovic thus submitted his resignation at that time.
The appellate review of the Commission’s ruling is now on any question of law or fact. La.Const. (1974) art. 10, § 12, Brown v. L.H.H.R.A., 346 So.2d 758 (La. App. 1st Cir.1977). The scope of review is essentially the same as that provided for appeals from the divisions of the district courts. La.Const. (1974) art. 5, § 10(B). Michel v. Department of Public Safety, Alcoholic Beverage Control Board, 341 So.2d 1161 (La.App. 1st Cir.1976), writ refused 343 So.2d 1078 (La.1977) Case 1.
The scope of appellate review was established in the case of Canter v. Koehring Company, 283 So.2d 716 (La.1973) and explained in Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978):
“... appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous).”
*228 Although this is the general rule of appellate review regarding rulings of the Civil Service Commission, in Merchant v. Dept. of Finance, 391 So.2d 587 (La.App. 4th Cir. 1980), the court held that the usual guidelines for appellate review, i.e., the manifest error rule, are not applicable where the evidence was taken before a hearing examiner and the record thus compiled was filed with the Commission without comment or recommendation. The court explained its reasoning as follows:
“The great weight accorded conclusions and determinations made by the trier of fact under Canter and Arceneaux is based on the advantage derived from personal observation of the witnesses, their demeanor on the stand, and the manner in which they responded to examination. Here, the Commission enjoyed no such advantage. Under these circumstances the standard of review by an appellate court is not unlike that of judicial review in other administrative matters, that is, whether the conclusion reached by the Commission is arbitrary or capricious or manifestly wrong.”
The holding in Merchant was followed in McGee v. Sewerage and Water Board of New Orleans, 396 So.2d 430 (La.App. 4th Cir.1981). In both cases, the court made an independent review of the record to determine whether the conclusion reached by the Commission was arbitrary or capricious or manifestly wrong. The procedure followed in Merchant and McGee was also used in the instant case, thus the standard pronounced in those cases should apply.
There can be no question that conduct which impairs the orderly operation of a public service in which an employee is engaged can be grounds for disciplinary action, such as dismissal. Sanders v. Dept. of Health and Human Resources, 394 So.2d 629 (La.App. 1st Cir.1980), writ denied, 399 So.2d 602 (La.1981), Dent v. Dept. of Corrections, 413 So.2d 920 (La.App. 1st Cir. 1982).
Although disciplinary action was not taken in the instant case, the jurisprudence indicates the awareness that the conduct of employees of a department is a crucial factor in maintaining an office that can properly serve the public. For this reason, a supervisor is given much latitude in exercising control of the employees over whom he has jurisdiction.
The Court in Branighan v. Department of Police, 362 So.2d 1221, 1223 (La.App. 4th Cir.1978), writ denied, 365 So.2d 247 (La.1978), said:
“The superintendent of police is charged with the operation of his department, and the Civil Service Commission is not his supervisor. The superintendent is the one who must run his department and exercise discretion in relation to disciplining his officers, and the Commission is not charged with exercising that discretion.”
Nonetheless, Branighan, supra, also held that:
“... [t]he Civil Service Commission’s authority ‘to hear and decide’ disciplinary cases, Const, art. 10 § 12, includes authority to modify (reduce) as well as to reverse or affirm a penalty.”
The Civil Service Commission has an obligation to uphold the disciplinary action of the appointing authority when there is sufficient cause shown to sustain such action. Joseph v. Dept. of Health, 389 So.2d 739 (La.App. 4th Cir.1980).
At the hearing, Mr. Marinovic and Captain Holman were the only two witnesses to present evidence. We are constrained to accept the findings and conclusions of the Civil Service Commission in this matter and quote in pertinent part:
“The background to the ‘forced resignation’ seems to focus on the following facts brought out in testimony by appellant and Captain Holman:
1. The ‘unwritten law’ of the department is to encourage policemen to complete their education. In fact, Mr. Marinovic had just finished a commercial to be aired on Channel 4, which encourages policemen to complete their education.
*229 2. The department usually cooperated with policemen in arranging their work schedules so that there is time off to attend school. This has been frequently done for other officers.
3. Mr. Marinovic had been attending classes for one and a half years, apparently without difficulty, before being transferred to the First District under Captain Holman.
4. Appellant had checked several sources concerning the possibilities of attending classes before agreeing to a transfer to the First District.
5. Appellant had only 2-3 weeks left before completing his Bachelor’s Degree in Criminal Justice.
After being transferred to the First District, Mr. Marinovic seems to have made many attempts to be both a Police Officer and a student following departmental rules and regulations. He appears to have been blocked at every turn.
1. Captain Holman had appellant transferred back to the First District while he was serving on limited duty in the Communications Department due to a hand injury unrelated to police work. Originally, Captain Holman refused to take him back on limited duty in the First District. (While in the Communications Department, appellant was permitted to attend classes.)
2. On the evening of April 21, appellant asked for two hours furlough time from Lieutenant Bell, his immediate supervisor. On the telephone Lieutenant Bell stated there was no problem. Later, according to appellant, Lieutenant Bell told him at the station that he had been instructed by Captain Holman to refuse his request. (Testimony was not contradicted by Captain Holman.)
3. Appellant asked to be able to work weekends so that he could take his days off to attend classes. This request was denied.
4. Appellant asked to be moved out of the First District. This request was denied.
5. Captain Holman told appellant that he could have no more furlough time even though he had additional time coming. Further, Captain Holman refused to give any reason for denying this request.
6.Captain Holman suggested that the only way appellant could leave the station for two hours to attend a class was to resign. It may also be noted that there was not a manpower shortage since appellant and others on desk duty were watching television.
Appellant seems to have done everything reasonable within his power to follow departmental regulations while attempting to improve his educational skills directly related to police work.
In his testimony, Captain Holman alludes to violations of departmental regulations relative to conduct while on sick leave and to some kind of misconduct by appellant. Testimony does not reveal any substantiation of these charges. If the charges were true, appropriate disciplinary action should have been initiated. In either case, it is irrelevant to the matter at hand.
It is true that the approval or denial of leave is within the province of Captain Holman. It seems equally true that Captain Holman went out of his way to provoke appellant into resigning. If Captain Holman was unhappy about granting furlough time to those Police Officers seeking to complete their education, it was his responsibility to have worked to establish some type of new departmental policy regarding educational leave. Captain Holman seems to have exceeded his authority in flatly ruling out additional annual leave if appellant had some time coming to him. In addition, Captain Holman’s actions appear capricious, improper and injudicious.”
This court has also considered the wording of Mr. Marinovic’s resignation wherein he stated:
“Capt. Holman of the First District, force (sic) my resignation by not allowing me *230 to continue- my education. Capt. Holman stipulated no reason for the denial, and a choise (sic) of dropping my education or dropping the job was eminent (sic). The New Orleans Police Dept, was not the reason for my resignation, and I thank the Department for giving me a chance to work for them.”
It is clear that at the time of Mr. Marino-vic’s confrontation with Capt. Holman, no reason was given for the refusal of the furlough. At the hearing itself, Capt. Holman’s explanation was, “[bjecause of the present manpower shortage”, yet no further evidence was given to show how the furlough of Mr. Marinovie would affect such “manpower shortage” or why other individuals were granted this furlough.
Thus we are confronted with whether the evidence in the record supports Captain Holman’s action by a preponderance. See Arnold v. New Orleans Police Department, 383 So.2d 810 (La.App. 4th Cir.1980), writ denied, 385 So.2d 274 (La.1980), and we agree with the Civil Service Commission that the actions taken were improper.
Accordingly, the judgment of the Civil Service Commission is affirmed.
AFFIRMED.