_[iBAGNERIS, Judge.
Randolph Scott appeals the New Orleans’s Civil Service Commission’s ruling that the contract between R.S. Security and Convenant House violated Section 42:1111 C(2)(d) and 42:1115 A of the State Code of Ethics. Scott further appeals the Commission holding that he failed to prove his claim of political discrimination.

FACTS

The City of New Orleans employed Randolph Scott as an Administrative Analyst with permanent status. Scott had worked for the City since 1973 and was promoted to Administrative Analyst in 1983.
In September 1994, Scott mailed out several solicitation letters to various New Orleans’ companies seeking to provide security services through his company R.S. Security. One of Scott’s letters was mailed to Covenant House, a non-profit organization that houses and counsels young adults. Convenant House is one of the programs that Scott monitored through his employment with the City of New hOr leans. Covenant House responded to the solicitation letter and Scott was offered the contract to provide security.
On September 28, 1994 Scott sent an inter-office memorandum to Bruce Bruley, his supervisor. Scott advised Bruley that he would probably enter into a contract with Covenant House to provide security. Scott requested a transfer from the Covenant House program if the contract would create a conflict of interest.
*1004 On October 6, 1994, Burley responded to Scott’s inter-office memorandum. Burley informed Scott that his first responsibility was to the City of New Orleans, and that no transfer would be made. As a result of Bruley’s letter, Scott sent a letter to Glen M. Scott, Sr., Burley’s supervisor; and again Scott requested a transfer and that the matter be reviewed under the conflicts of interest regulations. On October 17, 1994, R.S. Security entered into contract with Covenant House to provide security services.
On December 29, 1994, Avis M. Russell, the City Attorney, issued a legal opinion; she determined that the contract between R.S. Security and Covenant House violated the State and City Codes of Ethics. Specifically she opined that when a civil service employee secures a personal contract from an agency that receives City funding while that individual is assigned as a monitor for the Department of Housing and Neighborhood Development, a conflict exists. She stated that classified employees were subject to disciplinary action for violating the code of ethics.
Russell opined that Scott should be informed that he was in violation of the code of ethics and that he had three options; (1) Terminate his interest in R.S. Security; (2) Resign from his employment with the City of New Orleans; or (3) Terminate the contract between R.S. Security and Covenant House. Scott was padvised of the three options. Scott requested an extension of time within which to make a decision and was granted until January 30, 1995. Scott retained counsel, who sent a letter to Scott’s superiors outlining the reasons why the contract between R.S. Security and Covenant House did not violate the State and/or City Code of Ethics or the City Charter. Vincent T. Sylvain, Executive Assistant to the Mayor, responded to Scott’s Attorney letter and ordered Scott to choose one of the three options. At trial, Scott testified that he was threatened with suspension if he did not comply with the order, and threatened with dismissal if the matter remained unresolved after his suspension expired.
On February 14, 1995, Scott, R.S. Security and two employees of R.S. Security, filed a Petition for Injunction, Preliminary Injunction and Temporary Restraining Order against the City of New Orleans. Scott sought to enjoin the City from taking any disciplinary action against him, which had as its purpose and /or effect the termination of the contract between R.S. Security and Covenant House. The city filed an exception of lack of subject matter jurisdiction. The City in its pleading argued that the Civil Service Commission had exclusive jurisdiction over the disciplinary actions taken against classified employees of the City. The trial court granted the exception and dismissed the lawsuit filed by Scott and the other named plaintiffs. On February 15, 1995, Scott terminated the contract between R.S. Security and Covenant House.
Scott then filed an appeal with the City Civil Service Commission after the trial court granted the City’s exception of lack of subject matter jurisdiction. The City filed an exception of no cause of action and alleged that no disciplinary action was taken against Scott therefore, there was no basis for an appeal to be consider by the Commission.
l40n August 24, 1995, the Civil Service Commission overruled the exception of no cause of action after hearing arguments on the exception. On December 11, 1995, the Hearing Officer conducted a full evidentia-ry hearing on the merits. However, on January 10, 1996, the Commission maintained the exception of no cause of action, and held that the issue was moot because no discipline had been taken against Scott.
Scott appealed the decision of the Commission to this Court. This Court reversed the decision of the Civil Service Commission, finding the Commission erred in dismissing Scott’s and the other named plaintiffs’ case. The case was remanded to *1005 the Commission for furthering proceedings on the merit.
On December 4, 1998 Scott filed a Motion for Decision with the Commission, he requested a decision on his case. The Commission failed to respond to Scott’s motion. Scott filed a Writ of Mandamus with this Court on the grounds that the Commission’s inaction violated his rights under the Louisiana Constitution.
On July 2, 1999, this Court granted the writ of mandamus and ordered the Civil Service Commission to enter a decision on the merits of Scott’s case. On July 23, 1999, the Commission rendered judgment in favor of Scott. The Commission ruled that the appointing authority failed to prove that Scott violated any specific ethical provisions of the Home Rule Charter of the City of New Orleans, or the State or City Codes of Ethics cited by the City Attorney’s advisory opinion. The Commission ruled that the contract between R.S. Security and Covenant House violated LSA-R.S. 42:1111 C(2)(d) and LSA-R.S. 42:1115 A of the State Code of Ethics. Further, the Civil Service Commission ruled that Scott failed to prove his claim of political discrimination. It is from this decision Scott appeals.
| DISCUSSION
On appeal, Scott contends that the Civil Service Commission erred in failing to dismiss all State Ethics code charges against him because the commission lacked jurisdiction to consider violations of the State Ethics Code until the State Board of Ethics first determines and rules that an employee has violated the State Ethics Code. Further, Scott contends that the Commission erred in issuing ex proprio motu new charges against him.
Scott argues that the Commission erred in finding that he violated the Code of Ethics, particularly with regard to the silence of the commission on the uncontested testimony in regards to the transfer of monitoring duties among the Project Analysts employed by the City. We pretermit discussing these issues raised by Scott.
In the instant case, the pivotal question is whether the Civil Service Commission erred in ruling that the contract between R.S. Security and Covenant House violated the State’s Code Ethics without first seeking a determination from the State Board of Ethics whether Scott’s actions constituted an ethical violation under the state law. Scott argues that the State Board of Ethics has exclusive jurisdiction to interpret and enforce the provisions of the State Ethics Code. Further, that the Ethics Board must conduct a hearing on the complaints of violations of the Ethics Code prior to the City taking disciplinary action against a public employee for violation of the State Ethics Code.
The City answered the appeal filed by Scott and contended that it had the authority to take disciplinary action against Scott for violating the State’s and City’s Codes of Ethics. The City contends that its exercise of judgment should not be disturbed, “whenever a reasonable man might consider the employee’s action as |fia reasonable ground for the disciplinary action.” Morrell v. Department of Welfare, 266 So.2d 559 (La. App 4 th Cir.1972).
The City argues that it has a reasonable amount of latitude and discretion as the appointing authority when overseeing the conduct of its employees. Further, the City argues that Scott’s action was cause for it to take disciplinary action against him, specifically in order to alleviate the potential for an employee to act in a prejudicial manner while in the City’s employment.
In support of its contentions the City cites Villanueva v. Commission on Ethics for Public Employees, 96-1912 (La.5/20/97), 693 So.2d 154. The City contends that Villanueva supports its contention that the Civil Service Commission had jurisdiction to consider violations of the State Ethics Code. The City argues that the commission was ordered to hear the *1006 merits of Scott’s case by this Court whereby the disciplinary action was entangled or interwoven with an ethical issue.
In our review of Villanueva, we find that the City’s reliance and understanding of this case is misplaced. Further, Villa-nueva is distinguishable from Scott’s case. In Villanueva, the Ethics Commission investigated and conducted a hearing, as to whether Villanueva’s action of granting a permit to Dauvill, Inc., a corporation owned by Villanueva’s wife, to operate a landfill while he was the Superintendent of Police for the East Jefferson Levee District, violated the Code of Governmental Ethics. The Commission ruled that Villa-nueva’s action violated the Code of Governmental Ethics. The Ethics Commission fined both Villanueva and Dauvill, Inc. The Ethics Commission then ordered the District to suspend him until he took corrective measures.
Villanueva sought review of the ruling by the Civil Service Commission, while Dauvill appealed the Ethics Commission’s ruling to the Court of Appeal. |7The Civil Service Commission declined to review the penalty and cited lack of subject matter jurisdiction. The Ethics Commission concluded it had no jurisdiction because Villa-neuva had not been subjected to any action that affected his employment status, not because he been subjected to any disciplinary actions that may be imposed upon a permanent employee. Villanueva then appealed to the Court of Appeal. The Appellate Court remanded the matter back to the Civil Service Commission. The Appellate Court concluded that any action taken by the Ethics Commission against a classified permanent employee is subject to review by the Civil Service Commission before an appeal may be taken to the Court of Appeal.
In the instant case, the City disciplined Scott after the Civil Service Commission concluded the contract between R.S. Security and Covenant House violated both State and City Codes of Ethics. The City failed to file a complaint against Scott with the State Ethics Board for a determination of whether Scott’s action constituted a violation of the Code of Governmental Ethics.
An Appellate Court in reviewing a Civil Service Commission’s decision applies the clearly wrong or manifest error rule in determining whether to affirm the Commission’s ruling. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973); Walters v. Department of Police of New Orleans, 454 So.2d 106 (La.1984).
LSA-R.S. 42:1101-1169, the Code of Governmental Ethics, vests the State Board of Ethics with exclusive jurisdiction and authorizes the Ethics Board to review and investigate complaints pertaining to state ethical violations by public employees. The Ethics Board, upon making a determination of a violation of the code of ethics by a public employee,-may impose penalties and/or order the |8appointing authority to take disciplinary actions against the employee. Thus, the City improperly found that Scott violated the State Code of Ethics and improperly attempted to impose disciplinary action on Scott. Therefore, we reverse the portion of the Civil Service Commission’s ruling related to Scott’s violation of the State Code of Ethics.
Finally, Scott argues that the Civil Service Commission erred when it failed to find that he had proven his claim for political discrimination. Scott argues that the Commission viewed the term “political discrimination” too narrowly. Scott contends that the prohibition against political discrimination is not only limited to party labels also covers but discrimination against classified employees by unclassified employees.
Scott contends that the purpose of the prohibition against political discrimination is to prevent unclassified employees from eliminating or disciplining classified employees at will. Scott argues that a classified employee should be able to prove a claim of political discrimination by showing that the classified employee has been given *1007 favored treatment for similar or more egregious conduct. We disagree.
The Louisiana Constitution Art 10, Sec 8(B) provides:
Discrimination. No classified employee shall be discriminated against because of Political or religious beliefs, sex, or race. A classified employee so discriminated against shall have the right of appeal to the appropriate commission pursuant to section 12 of this part. The burden of proof on appeal, as to the facts, shall be on the employee.
It is well established that under La. Const. Art. 10, Sec. 12, decisions of the Civil Service Commission are subject to review on appeal on both questions of law and fact. Sanders v. Department of Health and Human Resources, 394 So.2d 629 (La.App. 1st Cir.), writ denied, 399 So.2d 602 (La.1981), citing Brown 9v. L. H. H. R. A., Lake Charles Mental Health Center, 346 So.2d 758 (La.App. 1st Cir.1977). The reviewing court must give great weight to the findings of fact of the civil service referee. See Sanders, supra. Under Louisiana law, in a proceeding before the Civil Service Commission, the employee has the burden of proving discrimination. La. Const. Art. 10, Sec. 8(B); Bernard v. L.H.H.R.A.-Southwest Charity Hospital of Lafayette, 358 So.2d 653 (La.App. 1st Cir.1978). Thus, after careful review, we conclude that the record fails to reveal any manifest error on the part of the Civil Service Commission in finding that Mr. Scott failed to prove he was discriminated against.

CONCULSION

Accordingly, we affirm the Civil Service Commission that Scott violated any provisions of the City of New Orleans Home Rule Charter or the City Code of Ethics. We reverse the Civil Service Commission finding that Scott violated any State Ethics Code and find that the charges against him by the Civil Service Commission infringed on his constitutional due process rights.

REVERSED AND REMANDED.

Court composed of Judge DENNIS R. BAGNERIS, Sr., Judge STEVEN R. PLOTKIN, and Judge JAMES F. McKAY.
ORDER
Considering the Motion for Clarification of Judgment:
IT IS HEREBY ORDERED THAT the motion for clarification is granted for the sole purpose of amending and clarifying the decision rendered by this Court on April 26, 2000.
Accordingly, we affirm the Civil Service Commission’s ruling that the Appointing Authority failed to prove that Scott violated any specific ethical provisions of the Home Rule Charter of the City of New Orleans or the City Code of Ethics.
Further, we reverse the Civil Service Commission ruling that the contract between R.S. Security and Covenant House violated LSA-R.S. 42:1111 C(2)(d) and LSA-R.S. 42:1115 A of the State Ethics code and find that the charges against him by the Civil Service Commission’s ruling.
Furthermore, we affirm the Civil Service Commission’s ruling that Scott failed to prove his claim of political discrimination.